T.C. Memo. 2012-246

UNITED STATES TAX COURT

JEFFREY A. ROYE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9913-10.                     Filed August 27, 2012.

P failed to file tax returns for 2003 and 2004. R prepared substitutes for returns under I.R.C. sec. 6020(b) for those years and issued a notice of deficiency determining deficiencies in income tax and additions to tax under I.R.C. secs. 6651(f) and (a)(2) and 6654. In his answer to amended petition, R asserted, as an alternative to additions to tax under I.R.C. sec. 6651(f), additions to tax under I.R.C. sec. 6651(a)(1).

<u>Held</u>: P is liable for the deficiencies in income tax and additions to tax under I.R.C. secs. 6651(f) and (a)(2) and 6654 for 2003 and 2004.

<u>Held</u>, <u>further</u>, P is liable for an I.R.C. sec. 6673(a)(1) penalty of $15,000.

[*2]   Jeffrey A. Roye, pro se.

Duy P. Tran, Kathryn F. Patterson, and George Edward Gasper, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge:  By notice of deficiency (notice), respondent determined deficiencies in, and additions to tax with respect to, petitioner's Federal income tax as follows:[1]

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(f) | Sec. 6651(a)(2) | Sec. 6654 |
| 2003 | $14,595 | $10,581 | $3,649 | $377 |
| 2004 | 21,342 | 15,473 | 5,336 | 612 |

By answer to amended petition, respondent supported by specific averments his determination of additions to tax under section 6651(f) and, as an alternative to those additions to tax, claimed additions to tax pursuant to section 6651(a)(1).

The issues for decision for 2003 and 2004 (years in issue) are whether petitioner:  (1) underreported his income, (2) is liable for additions to tax for

---

[1]Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all amounts to the nearest dollar.

**[*3]** failures to (A) pay tax timely and (B) pay estimated income tax, and (3) is liable for an addition to tax for fraudulent failure to file or, alternatively, for nonfraudulent failure to file.[2] We must also decide whether to make absolute this Court's order dated June 14, 2011, directing petitioner to show cause why a penalty should not be imposed upon him under section 6673(a)(1) (sanctioning taxpayers who, among other things, bring proceedings for the purpose of delay or advance a frivolous or groundless position).

## FINDINGS OF FACT

Background

At the time he filed the petition and amended petition, petitioner lived in Texas.

From at least 1999 to 2009, petitioner operated a pool-cleaning business. He did not file Federal income tax returns for taxable years 1999-2004.[3] He filed Federal income tax returns for taxable years 2005-08, engaging a tax return preparer to prepare those returns.

---

[2]There are also certain computational adjustments that follow from the adjustments at issue, but they are not in controversy, and we need not discuss them.

[3]We assume on the basis of his 2005-08 returns that petitioner was a cash basis taxpayer for 1999-2004.

**[\*4]** Internal Revenue Service (IRS) Examination

Respondent assigned Revenue Agent Mark Tae to examine petitioner's liability for the years in issue. By letter dated March 7, 2008, Revenue Agent Tae informed petitioner that the IRS had not received his tax returns for the years in issue and that he had scheduled a March 17, 2008, meeting to discuss the matter. In response, petitioner sent a letter, dated March 11, 2008, stating that he would not attend that meeting and denying that he is (1) liable for the "so-called income tax or any other internal revenue tax" and (2) a taxpayer under the Internal Revenue Code. He also stated that he had "filed returns in past years out of total ignorance of the tax laws." Petitioner subsequently sent to Revenue Agent Tae a document claiming sovereign immunity from, among other things, "any administrative action, civil or criminal" brought by the IRS.

Petitioner did not provide to Revenue Agent Tae records or other information concerning his taxable income for the years in issue. Therefore, to determine petitioner's income for those years, Revenue Agent Tae inquired of a credit bureau and, on the basis of the received information, he had summonses served on five financial institutions. One of those summoned financial institutions, JPMorgan Chase & Co. (JPMorgan Chase), informed him that, in the years in issue, petitioner had not maintained an account in his name, but he may

**[*5]** have had signature authority with respect to the bank account of "Freedom Church of Revelation Restoration Ministries" (bank account). Revenue Agent Tae had summonses served on JPMorgan Chase requesting information concerning that account.

Upon receiving the requested records, Revenue Agent Tae examined the deposits made to the bank account, over which petitioner, indeed, held sole signature authority, and copies of canceled checks. Noticing that memo lines of several deposited checks referenced "pool services", he sent 21 third-party contact letters to issuers of those checks requesting additional information. He received several responses, all of which confirmed that petitioner had serviced their swimming pools during the years in issue and either that they remitted to him checks made out to "FCR" or petitioner's company name was "FCR".

Revenue Agent Tae then reconstructed petitioner's income for the years in issue under the so-called bank deposits method. To reconstruct petitioner's income for each year in issue, he prepared a schedule of the net deposit and individual item amount of "checks that was [sic] received by [petitioner] and deposited to a bank account under the name of Freedom Church of Revelation", the source of each deposit (i.e., interest payment, name of issuer of check), the check number, and the memo text (i.e., Revenue Agent Tae's notation of an

**[*6]** interest payment, memo line of deposited checks). To the sum of those deposits he added undeposited items from third parties (customers),[4] and he subtracted interest credited to the account and identifiable nontaxable deposits. He believed that, for each year in issue, the resulting sum represented the year's unreported gross income from petitioner's pool-cleaning business.

2003 Adjustment

Revenue Agent Tae determined that, during 2003, total deposits of $49,974 were made to the bank account, from which he subtracted $378, representing interest, the difference being unreported net deposits from pool cleaning. He further concluded that petitioner also received from customers $2,983 for pool cleaning services rendered, none of which was deposited into the bank account. He determined the net deposits plus undeposited items from customers, totaling $52,579, to be petitioner's 2003 unreported gross income from his pool-cleaning business.

---

[4]Undeposited items from third parties represent amounts, identified by Revenue Agent Tae through third-party contact letters, paid to petitioner by customers of his pool-cleaning business, which were not deposited into the bank account.

[*7] 2004 Adjustment

Revenue Agent Tae determined that, during 2004, total deposits of $69,889 were made to the bank account, from which he subtracted $495 and $500, representing interest and gifts, respectively, the difference being unreported net deposits from pool cleaning.  He further concluded that petitioner also received from customers $1,961 for pool cleaning services rendered, none of which was deposited into the bank account.  He determined the net deposits plus undeposited items from customers, totaling $70,855, to be petitioner's 2004 unreported gross income from his pool-cleaning business.

All Years

Revenue Agent Tae could not identify, for either year in issue, any business expenses paid from the bank account.

Substitutes for Returns Under Section 6020(b)

Respondent prepared substitutes for returns under section 6020(b) for petitioner's years in issue (section 6020(b) returns).  The 2003 section 6020(b) return showed $378 and $52,579 of interest income and Schedule C gross receipts, respectively, totaling $52,957.  The 2004 section 6020(b) return showed $495 and $70,855 of interest income and Schedule C gross receipts, respectively, totaling $71,350.  The interest amounts and Schedule C gross receipts are the same as

[*8] those determined in Revenue Agent Tae's bank deposits analysis. The section 6020(b) returns showed resulting deficiencies of $14,595 and $21,342 for the years in issue. In response to a Letter 950 (i.e., a 30-day letter), proposing changes to petitioner's tax for those years, petitioner (1) disagreed with the proposed changes, (2) reiterated his denial of "taxpayer" status under the Internal Revenue Code, and (3) stated that he "did not file tax returns for tax years ending 200312 & 200412* * * [and] there is no Code Section in the Internal Revenue Code that authorizes the IRS to 'change' returns, even if [he] had filed a return." Petitioner did not make any income tax payments or any estimated tax payments for 2003 or 2004.

Notice

Respondent issued the notice on January 27, 2010, from his Small Business and Self-Employed Office, Dallas, Texas. It was signed on his behalf by Janet A. Miller, "Technical Services, Gulf States Area". In an attachment to the notice, respondent explained that, for each year in issue, his determination of a deficiency in tax was principally due to his adjustments increasing petitioner's gross receipts from his pool-cleaning business plus unreported interest income. Respondent also explained his determination of additions to tax under sections 6651(f) and (a)(2) and 6654 for each year in issue.

**[\*9]** Petitioner's Discovery

Petitioner used the Court's informal discovery procedures to, among other things, request of respondent the following:

REQUEST 1: Please provide a copy of the documentation, which states the badge number and/or employee identification number, job description, position, and GS level with the IRS of Janet A. Miller, along with a printed copy of the person's name, who signed the Notice of Deficiency, which was issued by respondent in the instant case (Docket No. 9913-10).

REQUEST 2: Please provide a copy of Janet A. Miller's (person who signed the Notice of Deficiency, which was issued by respondent in the instant case (Docket No. 9913-10) constitutional oath of office, as required by Article VI, Clause 3, U.S. Constitution and 5 U.S.C. Sec. 3331.

REQUEST 3: Please provide a copy of Janet A. Miller's (person who signed the Notice of Deficiency, which was issued by respondent in the instant case (Docket No. 9913-10) affidavit, declaring that she did not pay for or otherwise make a promise to secure the office as required by 5 USC Sec. 3332.

 * * * * * * *

REQUEST 11: Provide evidence that the Forms 1040 for years 2003 and 2004, that petitioner did not file, complied with the requirements of 44 U.S.C. §§ 3506 (c) (1) (B), 3507 & 3512 (a) (1) and (2) (Paperwork Reduction Act). The United States Supreme Court ruled in Dole v. United Steelworkers of America, 494 U.S. 26, 33 (1990), that the Paperwork Reduction Act applies to Internal Revenue Service tax forms.

REQUEST 12: Provide evidence that the Forms 1040 for years 2003 and 2004, that petitioner did not file, complied with the

**[*10]** requirements that the Office of Management & Budget ("OMB") mandates pursuant to regulations at 5 CFR 1320.8(b)(3) and 1320.9.

REQUEST 13:     Please provide a copy of all statutes creating a specific liability for taxes imposed by subtitle A of the Internal Revenue Code that apply to petitioner.

Petitioner moved for permission to orally examine Revenue Agent Tae and Ms. Miller.  Respondent objected, and we denied the motion.  In our order doing so, we stated:

> Respondent represents, and we agree, that petitioner's allegations of error in the petition raise meritless legal theories and the scope of the proposed depositions is to further advance his meritless arguments, which are not relevant to the subject of this case.  We shall deny the motion to take depositions.  We also advise petitioner to consult section 6673 of the Internal Revenue Code, which allows us to impose a penalty not in excess of $25,000 for, among other things, a proceeding in which the taxpayer's position is frivolous or groundless.

Petitioner further attempted to use the Court's formal discovery procedures--his motion to compel production of documents--to make requests similar to those he made using informal discovery.  Respondent objected, and we denied the motion.  In our order so doing, we stated:

> In the objection, respondent lists petitioner's assignments of error and objects that all of petitioner's theories are meritless.  We agree.  Petitioner's request for production of documents is not reasonably calculated to lead to the discovery of admissible evidence and is unduly burdensome and otherwise inappropriate.  * * *

[*11] We advised petitioner to read the authorities cited by respondent in his response to the motion and again advised him to examine section 6673. We added: "The purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled principles before they file returns and litigate." Takaba v. Commissioner, 119 T.C. 285, 295 (2002).

Trial of the Case

Petitioner failed to appear for trial of the case. Respondent proceeded, and the trial was concluded without petitioner's participation.

Posttrial

Petitioner disobeyed the Court's order at the conclusion of the trial to file a brief. Petitioner did file a motion to dismiss for lack of subject matter jurisdiction, stating as grounds, among others, the following:

> That declarant's occupation in life is operating a swimming pool cleaning and handyman service. These activities are not taxable revenue activities. That the free exercise and enjoyment of the God-given and constitutionally secured right to lawfully acquire property and/or compensation in Federal Reserve notes, by lawfully contracting my own labor in innocent and harmless activities cannot be (and therefore has not been) taxed for revenue purposes. I deny being subject to any internal revenue tax including the so-called income tax.

[*12] He summarized his argument as follows:

> For the reasons stated herein, declarant denies being a "taxpayer" as that term is very narrowly defined in the Internal Revenue Code at sections 1313(b) and 7701(a)(14). Respondent has not any cited any statute in its notice of deficiency, dated January 27, 2010, that makes declarant liable for the alleged for calendar years 2003 and 2004. Therefore, said notice is not a valid notice, could not possibly apply to declarant and therefor does not confer jurisdiction on this court.

We denied the motion.

We issued an order directing petitioner to show cause why the Court should not impose upon him a penalty under section 6673(a)(1).

OPINION

I.      Unreported Income

Respondent contends that petitioner had unreported gross receipts of $52,579 and $70,855 for the years in issue, from his pool-cleaning business. He also contends that petitioner received and failed to report for the years in issue interest income of $378 and $495, which was credited to a bank account held in the name of Freedom Church of Revelation Restoration Ministries over which petitioner held signature authority. Respondent arrives at his conclusions on the basis of the bank deposits analysis prepared by Revenue Agent Tae. Taking into account computational adjustments, respondent determined deficiencies in tax of $14,595 and $21,342 for the years in issue.

**[*13]** Petitioner bears the burden of proof. <u>See</u> Rule 142(a).[5]

Where a taxpayer fails to maintain adequate records, the Commissioner may reconstruct his income by using the bank deposits method. Sec. 446(b); <u>Clayton v. Commissioner</u>, 102 T.C. 632, 645 (1994). Bank deposits are prima facie evidence of income. <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986). The bank deposits method of proof assumes that all deposits made to a taxpayer's bank account are taxable income unless the taxpayer can show that the deposits are not taxable. <u>Clayton v. Commissioner</u>, 102 T.C. at 645. The Commissioner need not show a likely source of the income, but he must take into account any nontaxable items or deductible expenses of which he has knowledge. <u>Id.</u>

---

[5]The U.S. Court of Appeals for the Fifth Circuit, to which an appeal would lie absent a stipulation to the contrary, <u>see</u> sec. 7482(b)(1)(A), has held that for the presumption of correctness to attach in an unreported income case, the Commissioner must "present some predicate evidence supporting its determination", <u>Portillo v. Commissioner</u>, 932 F.2d 1128, 1133-1134 (5th Cir. 1991), <u>aff'g in part, rev'g in part</u> T.C. Memo. 1990-68. Respondent has done so by submitting, for each year in issue, a record of bank deposits made to, and interest credited to, the bank account over which petitioner held sole signature authority and testimony of individuals that they remitted checks to petitioner for pool cleaning services rendered during the years in issue.

In addition, petitioner makes no argument that, pursuant to sec. 7491(a), the burden shifts to respondent. In any event, the record establishes that petitioner does not satisfy the preconditions found in sec. 7491(a)(2).

**[*14]** To reconstruct petitioner's income for the years in issue under the bank deposits method, Revenue Agent Tae had summonses served on several financial institutions, through which he identified a bank account held in the name of "Freedom Church of Revelation Restoration Ministries" over which petitioner held signature authority. He also sent 21 third-party contact letters from which he confirmed the existence of petitioner's pool-cleaning business and the deposit in the years in issue of its business receipts to that bank account. Revenue Agent Tae received no information from petitioner; therefore, in preparing the bank deposits analysis, he analyzed the summoned records and contact letters to identify nontaxable deposits and deductible expenses. To calculate net deposits, he reduced the total deposits for each examined year by nontaxable deposits and interest credited to the bank account. He determined that the net deposits for each year in issue plus undeposited items from third parties, i.e., net receipts, constituted unreported gross income from petitioner's pool-cleaning business.

Petitioner does not challenge the facts on which respondent's determinations are based, his methodology in reconstructing petitioner's income, or his calculation of tax. He does not claim that for the years in issue his proceeds from pool cleaning and the interest he earned are any less than respondent determined or that proceeds from providing services and interest are not items of gross income. They

**[\*15]** are.  Sec. 61(a)(1) and (2).  In the amended petition, petitioner advances only meritless arguments to the effect that:  (1) the notice was signed and issued by an individual lacking delegated authority to do so, (2) the notice does not plainly and clearly lay any income tax liability on petitioner, (3) respondent lacks the authority under section 6020(b) to file substitutes for returns for petitioner, and (4) the notice placed a substantial burden upon petitioner's religious exercise in contravention of the Religious Freedom Restoration Act of 1993.  As evidence of the arguments' lack of merit, see, e.g., Wheeler v. Commissioner, 127 T.C. 200, 205 (2006) (holding that a notice of deficiency's failure to include a statutory citation for each adjustment does not invalidate the notice), aff'd, 521 F.3d 1289 (10th Cir. 2008), Adams v. Commissioner, 110 T.C. 137, 139 (1998) (holding that the Religious Freedom Restoration Act of 1993 did not exempt the taxpayer from Federal income tax because requiring his participation in the Federal income tax system is the only means of furthering the Government's compelling interest in establishing uniform, mandatory participation in that system, irrespective of religious belief), aff'd, 170 F.3d 173 (3d Cir. 1999), and Green v. Commissioner, T.C. Memo. 2007-262, 2007 WL 2783107, at \*3 (holding it to be "well settled"

**[\*16]** that the Secretary or his delegate may issue notices of deficiency).[6] We shall

not painstakingly further address his assertions "with somber reasoning and copious

citation of precedent; to do so might suggest that these arguments have some

colorable merit." Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984).

Petitioner received $52,957 and $71,350 in unreported gross income for the

years in issue, resulting in deficiencies in tax for those years of $14,595 and

$21,342, respectively.

II.     Additions to Tax and Penalties

A.      Additions to Tax Under Sections 6651(a)(2) and 6654

In general, the Commissioner bears the burden of producing evidence that it

---

[6]While in his motion to compel production of documents petitioner requests copies of all delegation orders applying to the job description, position, and GS level of Ms. Miller (who signed the notice), he concedes: "[He] is not challenging the authority of Janet A. Miller to sign the notice". He states his purpose for the request as follows:

> The information responsive to this request is necessary because it is petitioner's responsibility to make sure that the agent acting for the government, in this case, Janet A. Miller stays within the bounds of her authority. * * * When challenged, those posing as government officers and agents are required to affirmatively prove whatever authority they claim.

Petitioner's request manifests a frivolous purpose. See, e.g., Kaye v. Commissioner, T.C. Memo. 2003-74, 2003 WL 1138308, at \*2-\*3.

**[*17]** is appropriate to impose the relevant addition to tax. Sec. 7491(c). However, if a taxpayer fails to assign error to an addition to tax, he is deemed, under Rule 34(b)(4), to have conceded that issue; and the Commissioner need not produce evidence that that addition to tax is appropriate. Funk v. Commissioner, 123 T.C. 213, 218 (2004); Swain v. Commissioner, 118 T.C. 358, 363 (2002); DeVries v. Commissioner, T.C. Memo. 2011-185, 2011 WL 3418248, at *10.

In the notice, respondent determined that petitioner is liable for each year in issue for additions to tax, under section 6651(a)(2), for failure to pay the amount of tax shown on a return, and, under section 6654(a), for failure to pay estimated tax. Section 6651(a)(2) imposes an addition to tax where the taxpayer fails to pay the amount shown on a return by the prescribed date unless the taxpayer shows that such failure is due to reasonable cause and not due to willful neglect. The amount of the addition to tax is 0.5% of the amount of the tax for each month or fraction thereof during which the tax remains unpaid, up to a maximum addition of 25%. The addition to tax applies only when an amount of tax is shown on a return. Cabirac v. Commissioner, 120 T.C. 163, 170 (2003). A substitute for return prepared by the IRS, acting for the Secretary, under section 6020(b) is treated as the taxpayer's return for purposes of section 6651(a)(2). Sec. 6651(g)(2); Wheeler v. Commissioner, 127 T.C. at 208-209.

**[*18]** Section 6654(a) and (b) provides for an addition to tax in the case of a taxpayer's underpayment of a required installment of estimated tax. Each required installment of estimated tax is equal to 25% of the "required annual payment", which in turn is equal to the lesser of (1) "90 percent of the tax shown on the return for the taxable year (or, if no return is filed, 90 percent of the tax for such year)", or (2) if the individual filed a return for the preceding taxable year, 100% of the tax shown on that return. Sec. 6654(d)(1)(A) and (B).

In neither the petition nor the amended petition does petitioner, for either year in issue, assign error to, or contest in any way, the additions to tax under section 6651(a)(2) or 6654. Accordingly, he is deemed to have conceded those issues, and we need not consider whether respondent met his burden of production as to the propriety of those additions to tax. We shall sustain the additions.

B.    Addition to Tax Under Section 6651(f)

We next address whether petitioner is liable for the addition to tax under section 6651(f) for each year in issue. Section 6651(f) imposes an addition to tax of up to 75% of the amount of tax required to be shown on the return where the failure to file a Federal tax return is due to fraudulent conduct. In determining whether a taxpayer's failure to file is fraudulent, we consider the same elements considered in imposing the section 6663(a) civil fraud penalty, Clayton v.

**[\*19]** <u>Commissioner</u>, 102 T.C. at 653, but focus on the taxpayer's decision to not file his return when due, <u>Enayat v. Commissioner</u>, T.C. Memo. 2009-257, 2009 WL 3763085, at \*24.  The Commissioner bears the burden of proof.  <u>See</u> sec. 7454(a); Rule 142(b).  To establish fraud, the Commissioner must show by clear and convincing evidence both that (1) the taxpayer underpaid his income tax for each year in issue and (2) at least some portion of each such underpayment was due to fraud.  <u>See</u> <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 873 (1991), <u>aff'd</u>, 959 F.2d 16 (2d Cir. 1992).  Thus, in establishing the underpayment, the Commissioner may not rely on the taxpayer's failure to meet his burden of proving error in the Commissioner's determination as to the deficiencies.  <u>Id.</u>  The Commissioner need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each year in issue is attributable to fraud.  <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 699 (1989).

We must determine whether petitioner's failure to file his tax returns for the years in issue was fraudulent.

        1.     <u>Underpayment of Tax</u>

"Where allegations of fraud are intertwined with unreported and indirectly reconstructed income (e.g., under the bank deposits method), it is properly part of the Commissioner's case to investigate and negative reasonable explanations of

[*20] nontaxable sources advanced by the taxpayer." Scott v. Commissioner, T.C. Memo. 2012-65, 2012 WL 798039, at *6; see Holland v. United States, 348 U.S. 121, 135-136 (1954). Where, as in this case, the taxpayer has not appeared at trial and has not filed any briefs in opposition to the Commissioner's position, he has not advanced specific nontaxable sources; and the Commissioner's proof of a likely taxable source of deposits is sufficient to meet his burden of establishing unreported income. Scott v. Commissioner, 2012 WL 798039, at *6; see United States v. Massei, 355 U.S. 595 (1958). The Commissioner must not only show that the taxpayer had unreported income for each year in issue but that he underpaid his tax. Scott v. Commissioner, 2012 WL 798039, at *6.

Respondent has established by clear and convincing evidence that petitioner underpaid his tax for each year in issue. As detailed in our analysis above, respondent's bank deposits analysis shows by clear and convincing evidence that petitioner underreported his income by $52,957 and $71,350 for the years in issue, by failing to report income from his pool-cleaning business and interest credited to the bank account. Petitioner makes no argument as to nontaxable sources or that he has unclaimed deductions or credits that reduce the tax burden attributable each year to his unreported income. Id. at *10. On each of the section 6020(b) returns for the years in issue, respondent accorded petitioner a standard deduction and one

**[*21]** personal exemption and correctly calculated a tax liability of $7,166 and $11,331, respectively, which corresponds to the tax tables in effect for the years in issue. Petitioner's underreporting of income resulted each year in his underpaying his tax.

Respondent has thus shown by clear and convincing evidence that petitioner underreported his gross income and, consequently, underpaid his tax for each year in issue.

### 2. Fraudulent Intent

The second prong of the fraud test requires the Commissioner to prove that, for each year, the taxpayer's failure to file an income tax return was due to fraud. Fraud for that purpose is defined as "intentional wrongdoing designed to evade tax believed to be owing." DiLeo v. Commissioner, 96 T.C. at 874. In other words, the Commissioner must prove that "the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes by not filing his return when due." Zhadanov v. Commissioner, T.C. Memo. 2002-104, 2002 WL 731708, at *9. A fraudulent state of mind may be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. DiLeo v. Commissioner, 96 T.C. at 874.

**[\*22]** Over the years, courts have developed a nonexclusive list of factors that demonstrate fraudulent intent. Those badges of fraud include: (1) understatement of income, (2) maintenance of inadequate records, (3) failure to file tax returns, (4) implausible or inconsistent explanations of behavior, (5) concealment of income or assets, (6) failure to cooperate with tax authorities, (7) engaging in illegal activities, (8) an intent to mislead which may be inferred from a pattern of conduct, (9) lack of credibility of the taxpayer's testimony, (10) filing false documents, and (11) dealing in cash. E.g., Browning v. Commissioner, T.C. Memo. 2011-261, 2011 WL 5289636, at \*13 (and cases cited threat). "Although no single factor is necessarily sufficient to establish fraud, a combination of factors is more likely to constitute persuasive evidence." Id. "[A]cts committed subsequent to the due date of a return may be relevant evidence of a taxpayer's intent in failing to file that return." Sherrer v. Commissioner, T.C. Memo. 1999-122, 1999 WL 203812, at \*12, aff'd, 5 Fed. Appx. 719 (9th Cir. 2001).

The following factors indicate petitioner's fraudulent intent during each year in issue.

**[\*23]**          a.          <u>Understatement of Income</u>

"A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud." <u>Parks v. Commissioner</u>, 94 T.C. 654, 664 (1990). In failing to file his tax returns for the years in issue, petitioner underreported his income by more than $124,000 over that two-year period. In the context of the factual circumstances discussed below, we consider that two-year pattern of consistent underreporting of income an indicium of fraud. <u>See, e.g.</u>, <u>Delvecchio v. Commissioner</u>, T.C. Memo. 2001-130, 2001 WL 617192, at \*5 ("Two years of substantial understatement may support a finding of fraud."), <u>aff'd</u>, 37 Fed. Appx. 979 (11th Cir. 2002).

          b.          <u>Concealment of Assets</u>

"Concealing assets coupled with a failure to file tax returns is a strong indication of fraud." <u>Freidus v. Commissioner</u>, T.C. Memo. 1999-195, 1999 WL 391919, at \*10. Petitioner took affirmative steps to conceal income derived from his pool-cleaning business. Petitioner maintained no bank accounts in his name and deposited business receipts into an account held in the name of "Freedom Church of Revelation Restoration Ministries", effectively hiding that income because that account was held under the Freedom Church of Revelation

[*24] Restoration Ministries' identification number. The record shows no evidence of the account's use for church purposes, only bank transactions related to petitioner's pool business. We cannot conceive of a purpose for depositing pool business receipts into that bank account other than to conceal their existence from respondent and avoid tax liability. Further, petitioner failed to deposit numerous receipts from customers during the years in issue, making it difficult for respondent to identify those receipts and charge that income to petitioner. Petitioner's use of the Freedom Church of Revelation Restoration Ministries' bank account as a repository for his business income coupled with his failure to deposit numerous business receipts is clear and convincing evidence of his attempt to conceal income for the years in issue.

   c. <u>Implausible or Inconsistent Explanations of Behavior</u>

Petitioner's inconsistent explanations to Revenue Agent Tae for his failure to file tax returns also furnishes clear and convincing evidence of his attempt to conceal his pool-cleaning business income by failing to file returns. In response to Revenue Agent Tae's inquiry concerning his tax returns for the years in issue, petitioner sent a letter dated March 11, 2008, in which he disputed his obligation to pay income tax and denied his status as a taxpayer under the Internal Revenue Code. However, as of that date (March 2008), petitioner had engaged a tax return

[*25] preparer to prepare his 2005 and 2006 tax returns and, as far as we can determine, timely filed those returns. Moreover, while disputing throughout the examination his obligation to file returns for the years in issue, petitioner engaged a tax return preparer to prepare his 2007 tax return, and, again we assume, timely filed that return. He later filed a tax return for 2008. Petitioner has not attempted to explain why he believed that he was not a taxpayer in, and thus not required to file returns for, the years in issue but achieved that status in 2005-08. In his March 11, 2008, letter, petitioner informed Revenue Agent Tae that he had "filed returns in past years out of total ignorance of the tax laws." Even if that was true, at the time of that letter, petitioner had already prepared, if not filed, his 2007 return. His explanation for failing to file tax returns could have no other purpose than concealment of his income from the pool-cleaning business and avoidance of paying tax believed to be owed.

### d. Failure To Cooperate With Tax Authorities

Petitioner did not cooperate with Revenue Agent Tae's requests for petitioner's tax returns for the years in issue or his requests for records and information concerning petitioner's tax liability for those years. Petitioner refused to meet with Revenue Agent Tae to discuss petitioner's missing tax returns, instead denying his liability for the "so-called income tax" and claiming sovereign

**[*26]** immunity from administrative actions brought by the IRS. Petitioner thus misled Revenue Agent Tae as to the existence of the bank account and the taxable income held therein. Revenue Agent Tae was forced to issue third-party inquiries and summonses to eventually uncover the bank account's existence, its connection with petitioner's pool-cleaning business, and ultimately the taxable business receipts for the years in issue. We conclude that petitioner's failure to cooperate with respondent's agent is indicative of a fraudulent failure to file.

### 3. Conclusion

Respondent has proven by clear and convincing evidence that petitioner's failure to file his tax returns for the years in issue was fraudulent. Petitioner has not proven that his failure to do so was due to reasonable cause and not due to willful neglect. See sec. 6651(a)(1). Accordingly, we conclude that petitioner is liable for the addition to tax under section 6651(f) for each year in issue. Because we find petitioner so liable, we do not address respondent's alternative argument of the applicability of the addition to tax for failure to file timely under section 6651(a)(1).

[*27] C.    Section 6673(a)(1) Penalty

On June 14, 2011, we ordered petitioner to show cause why the Court should not impose a penalty upon him under section 6673(a)(1). Petitioner failed to obey the order.

Under section 6673(a)(1)(A) and (B), this Court may require a taxpayer to pay a penalty not in excess of $25,000 if (1) the taxpayer has instituted or maintained a proceeding primarily for delay, or (2) the taxpayer's position in such proceeding is "frivolous or groundless". A taxpayer's position is frivolous "if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law." Goff v. Commissioner, 135 T.C. 231, 237 (2010). We may consider sua sponte whether to impose upon a taxpayer a section 6673(a)(1) penalty. E.g., Hyde v. Commissioner, T.C. Memo. 2011-104, 2011 WL 1900152, at *6, aff'd, 471 Fed. Appx. 537 (8th Cir. 2012).

As stated supra, petitioner advanced only meritless arguments as to why he is not required to pay tax on the Schedule C business gross receipts and interest income at issue herein. We warned petitioner on several occasions that we would consider imposing on him a section 6673 penalty. Moreover, petitioner refused to heed our instruction to appear for trial, did not comply with the briefing schedule we set, and disobeyed our order to show cause. We can see no reason for that

[*28] defiance other than to delay respondent's collection of Federal income tax due and owing for the years in issue, which is a separate basis for imposing a section 6673(a)(1) penalty. We likewise see no reason other than delay for petitioner's unwarranted discovery requests, which we have set out in some detail, and which further justify a penalty. Cf. Powell v. Commissioner, T.C. Memo. 2009-174, 2009 WL 2169877, at *6 ("Effecting delay and unnecessary responses through abuse of the discovery process is an appropriate basis for an award under section 6673(a)(2)."), aff'd sub nom. Barringer v. U.S. Tax Court, 408 Fed. Appx. 381 (D.C. Cir. 2010). Petitioner has wasted both the Court's and respondent's time and deserves a substantial penalty.

Accordingly, we shall make our order to show cause absolute and impose upon petitioner a penalty under section 6673(a)(1) of $15,000.

III.    Conclusion

Petitioner is liable for the deficiencies, penalties, and additions to tax as determined herein.

An appropriate order will be issued, and decision will be entered for respondent.