T.C. Memo. 2009-83

UNITED STATES TAX COURT

THOMAS E. & IRIS M. TILLEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4097-08.                    Filed April 27, 2009.

Thomas E. Tilley and Iris M. Tilley, pro sese.

<u>J. Craig Young</u>, for respondent.

MEMORANDUM OPINION

COHEN, <u>Judge</u>:  In separate notices, respondent determined
deficiencies, penalties, and additions to tax as follows:

<u>Thomas E. Tilley</u>

| | | Additions to Tax/Penalties | | |
|---|---|---|---|---|
| <u>Year</u> | <u>Deficiency</u> | <u>Sec. 6651(f)</u> | <u>Sec. 6651(a)(2)</u> | <u>Sec. 6654</u> |
| 2000 | $338,491 | $245,406 | $84,623 | $18,080 |
| 2001 | 1,608,566 | 1,165,198 | 401,792 | 64,222 |

Iris M. Tilley

|      |            | Additions to Tax/Penalties |                |           |
|------|------------|----------------------------|----------------|-----------|
| Year | Deficiency | Sec. 6651(f) | Sec. 6651(a)(2) | Sec. 6654 |
| 2000 | $327,015   | $237,066     | $81,747         | $17,466   |
| 2001 | 1,596,563  | 1,157,508    | 399,141         | 63,805    |

Unless otherwise indicated, all section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners sent to the Court various frivolous documents and willfully failed and refused to appear for trial. The issues for decision are whether the deficiencies should be sustained by reason of petitioners' default and whether respondent has established the prerequisites for the penalties and additions to tax.

## Background

Petitioners resided in North Carolina at the time that they filed their petition. Because they refused to participate in preparation of this case for trial, there is no stipulation. The background stated here is based on the pleadings, on respondent's records, and on the testimony of the examiner who reconstructed petitioners' income for purposes of the statutory notices of deficiency.

Petitioners failed to file Federal income tax returns for 2000 or 2001 or for many years before and after those years. Because petitioners failed to produce books and records or to

cooperate in the determination of their taxable income, the examiner caused summonses to be served on banks with which petitioners did business. Petitioners filed frivolous challenges to the summonses, which caused delays in obtaining the records. The summonses were ultimately enforced by the District Court. After reviewing the bank records and third party reports of specific items of income, the examiner reconstructed petitioners' income using the source and application of funds method.

The specific items of income identified by the examiner with respect to Thomas E. Tilley (Mr. Tilley) included a retirement account distribution, nonemployee compensation, Social Security benefits, and patronage dividends. The known sources of funds received by Mr. Tilley totaled $12,457 during 2000 and $14,117 during 2001. Additional unreported income was determined from loan payments totaling $820,505.30 in 2000 and $3,906,732.31 in 2001 applied to loans showing Mr. Tilley as a joint borrower. Additional applications of funds were determined on the basis of personal living expenses shown in the bank records secured pursuant to the summonses.

The specific items of income identified by the examiner with respect to Iris M. Tilley (Mrs. Tilley) included wage income, Social Security benefits, and interest income. The known sources of funds received by Mrs. Tilley totaled $6,033 during 2000 and $6,491 during 2001. Additional unreported income was determined

from loan payments totaling $797,389.88 in 2000 and $3,884,518.31 in 2001 applied to loans showing Mrs. Tilley as a joint borrower. Additional applications of funds were determined on the basis of personal living expenses shown in the bank records secured pursuant to the summonses.

Among the records received as a result of the summonses to banks were financial statements signed by petitioners representing that they owned a mobile home park and other real estate and that they received substantial income from their properties. In a 1994 loan application, Mr. Tilley was described as "self-employed - mobile home rentals". In a financial statement dated August 8, 1995, petitioners represented that they owned real estate valued at $9,433,000 with mortgages payable totaling $3,787,867. The statement represented that petitioners had a net worth of $7,772,683. A warranty deed, which showed "The Tilley Trust" as the grantor, and a Wake County real estate record reflected sale of a mobile home park in October 2001 for $3,000,000.

Petitioners never produced trust documents or other evidence of the separate existence of a Tilley Trust during the examination of their liabilities for 2000 and 2001 or during the course of this case in Court. They did not mention a trust in their petition. The petition claimed, but did not identify, various exemptions, deductions, and credits. Many of the

allegations are similar or identical to allegations in petitions filed by tax protesters.  Also among the allegations is the following:

>     Due to lack of records, Petitioners need to reconstitute records and provide reasonable estimations of business expenses as provided for in the Cohen [sic] case, below.  This case shows that the tax court can use reasonable figures when records do not exist.  The taxpayer can also reconstruct lost paperwork to substantiate deductions and business expenses.

>     Further the taxpayer can claim a percentage of business expenses and profit for a business enterprise, even if he has no records to substantiate his business expenses.

This allegation is relevant in view of petitioners' later claim, described below, that they had no income-producing activities during 2000 and 2001.

This case was set for trial in Winston-Salem, North Carolina, on January 26, 2009.  The Notice Setting Case For Trial included a warning as follows: YOUR FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST YOU. Attached to the Notice Setting Case For Trial was the Court's Standing Pretrial Order.  Both the notice and the pretrial order advised petitioners of the obligation to cooperate and to stipulate to facts and documents about which there should be no disagreement.

Respondent served requests for admission on petitioners, attaching documents, setting out the specific items of income received by petitioners, and setting out the conclusions that had

been reached by the examiner on the basis of the bank records obtained as a result of the summonses. Petitioners responded to the requests for admission with a document that they titled "Affidavit of Truth". They did not deny receipt of the specific items of income but instead claimed that they believed them to be "an un-taxable event". Among other things, petitioners alleged that they were not required to file a tax return because they had no taxable income and that "wages are not income as defined in the IRS law".

Shortly before trial, petitioners sent to the Court a package of documents including a copy of the Handbook for Special Agents portion of the Internal Revenue Manual. The documents contained various spurious accusations against respondent, long refuted tax-protester theories, and other unintelligible and irrelevant arguments. In one signed document, Mrs. Tilley denied that she was a "person" or a "taxpayer" under the Internal Revenue Code. The package of documents was filed as petitioners' pretrial memorandum. Before the trial date, petitioners mailed to the Court a document entitled "Notice of Fraud and R.I.C.O. Violations", which was received after the trial date and was filed as a supplement to pretrial memorandum. Petitioners' documents made clear that their actions were willful in that their failure to appear for trial was consistent with their prior course of refusing to cooperate in the determination of their

correct tax liabilities. None of petitioners' documents alleged that the unexplained sources of loan payments used in respondent's determination of unreported income were attributable to a trust.

Petitioners failed to appear at the calendar call on January 26, 2009. The case was set for trial on January 27, 2009. Respondent presented evidence that petitioners had failed to file returns for 2000 and 2001 and that substitutes for returns had been filed pursuant to section 6020(b) for 2000, 2001, and subsequent years.

Respondent also presented evidence with respect to the penalty for fraudulent failure to file returns. This evidence included the pattern of nonfiling for multiple years before and after 2000 and 2001, implausible explanations, concealment of income and assets, failure to cooperate, and conduct actively obstructing the determination of petitioners' correct tax liability. Respondent's witness, the revenue agent who had conducted the examination, and respondent's counsel both acknowledged the duplication of income items without a known source in the separate notices of deficiency but explained that the available records, without any input from petitioners, did not support allocation and that the separate determinations were necessary to prevent whipsaw in case either petitioner later claimed that the income belonged to the other.

After trial, the Court issued an Order to Show Cause that included the following:

Petitioners have refused to participate in determination of their actual taxable income, and they have actively obstructed lawful processes by which information necessary to that determination could be obtained. As a result, neither respondent nor the Court can effect a reliable reduction of any of the liabilities in dispute. Reduction of the deficiencies would, of course, result in proportionate reduction of the penalties and additions to tax.

The obfuscation and tax protestor gibberish engaged in by petitioners in this case is inexplicable foolishness. They are risking loss of whatever assets they possess, because collection efforts will undoubtedly proceed once a decision is entered in this case. An adverse decision for the full amounts determined against each petitioner is inevitable on the existing record, and such decision will be entered by the Court without undue delay. In order to provide petitioners with one last opportunity to abandon their tactics, to secure competent counsel, and to participate in determination of their correct, and presumably reduced, liabilities, it is hereby

ORDERED that on or before March 2, 2009, petitioners shall show cause in writing served on respondent and filed with the Court why a decision should not be entered in this case determining that they are liable for the full amount of deficiencies, penalties and additions to tax set out in the statutory notices of deficiency that are the subject of their petition. Such showing shall:

Explain the source of funds used to pay off loans and to engage in other transactions identified in respondent's reconstruction of petitioners' income for 2000 and 2001;

Explain the business or other income producing activities engaged in by petitioners during 2000 and 2001 in which they incurred the business expenses referred to in their petition;

Identify any witnesses that petitioners would call at any further trial of this case, with a brief summary of the expected testimony of each witness;

Include a list specifying by nature and amount each deduction, exemption, or credit claimed by petitioners as reducing their taxable income; and

Attach copies of any records corroborating their positions.

The above deadline will not be extended unless, prior to March 2, 2009, petitioners have met with respondent's counsel or a designated representative of respondent's counsel, arranged to cooperate in curing their prior defaults, and filed with the Court a motion with respondent's agreement to extend the date.

Petitioners submitted a response that repeated their spurious accusations, frivolous arguments, and denials that they had income during 2000 and 2001. They allege that a trust is a separate entity for tax purposes, but they have not provided any of the information specified in the Order To Show Cause. There are no trust agreements in the record, and there is no reason to believe that any trust involving petitioners is not a grantor trust or a sham trust or that petitioners did not receive taxable distributions from any trust. There is no indication that tax returns were filed by a Tilley Trust. During the course of the examination and the pendency of the case, petitioners have failed to identify any nontaxable source of the funds used to pay off loans in 2000 and 2001.

## Discussion

At the time of trial, respondent's counsel described numerous efforts to reach petitioners and to secure their cooperation in resolving the issues. Left with no alternative, counsel stated that "[regarding] this whipsaw issue, it's unfortunate, but it's the taxpayers own creation. I would ask the Court to simply hold them in default as to all the issues and all the additions to tax." Because it appears that the probable source of petitioners' unreported income was sales or rentals of real property, there is no way to allocate that income without knowing more about the ownership of the property than appears in the record. Petitioners have been given every opportunity to provide that information and have been repeatedly warned about the consequences of failure to provide it.

The record reflects petitioners' longtime delinquencies and frivolous positions with respect to their Federal tax obligations. Their tax liabilities for 1991 and 1992 were the subject of Tilley v. Commissioner, T.C. Memo. 1997-222, and collection actions for 1991, 1992, 1994, and 1995 were the subject of Tilley v. Commissioner, T.C. Memo. 2002-161. In letters dated September 12, 1996, to the Secretary of the Treasury, petitioners admitted that they had not filed Federal tax returns for 1994 or 1995, with the following explanation:

> The reason for not doing so is that I do not
> believe that I have received any gross income for that

year.  This is based upon an examination of all records which I have concerning my affairs.  These records do not show:

(a) Any evidence upon which I can make a determination that I am a citizen or resident of the United States, as that term is used in the 14th Amendment to the Constitution, and at 26 CFR §1.1-1(a)-(c).

(b) Any evidence of gross income from a source within, or from a trade or business which is effectively connected with the United States.

(c) Any evidence which indicates that I have made any determination for said year that I am legally obligated to any tax not mandated upon me by Congress.

Under these circumstances, petitioners' denials of receipt of taxable income have no credibility.

Rule 123 provides as follows:

(a) Default:  If any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court, then such party may be held in default by the Court either on motion of another party or on the initiative of the Court.  Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper, or may impose such sanctions (see, e.g., Rule 104) as the Court may deem appropriate.  The Court may, in its discretion, conduct hearings to ascertain whether a default has been committed, to determine the decision to be entered or the sanctions to be imposed, or to ascertain the truth of any matter.

(b) Dismissal:  For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner. The Court may, for similar reasons, decide against any party any issue as to which such party has the burden of proof, and such decision shall be treated as a dismissal for purposes of paragraphs (c) and (d) of this Rule.

(c) Setting Aside Default or Dismissal:  For reasons deemed sufficient by the Court and upon motion expeditiously made, the Court may set aside a default or dismissal or the decision rendered thereon.

(d) Effect of Decision on Default or Dismissal:  A decision rendered upon a default or in consequence of a dismissal, other than a dismissal for lack of jurisdiction, shall operate as an adjudication on the merits.

Rule 149(a) provides as follows:

(a) Attendance at Trials:  The unexcused absence of a party or a party's counsel when a case is called for trial will not be ground for delay.  The case may be dismissed for failure properly to prosecute, or the trial may proceed and the case be regarded as submitted on the part of the absent party or parties.

Because the examiner could not determine whether the income used to pay the loans showing petitioners as joint borrowers was income of Mr. Tilley or of Mrs. Tilley, and to avoid "whipsaw" and to protect the interest of the Government, the same loan payments were determined to be income to each individual in the separate notices of deficiency.  If petitioners had cooperated and explained the sources of payments of the loans, the income would have been allocated between them and the duplication eliminated.  Without their cooperation or any other information, however, there is no reasonable way to allocate the income.  We have considered the entire record in this case and conclude that we have no basis for reducing the deficiencies, which were reasonably determined by the examining agent.  The deficiencies will be sustained by reason of petitioners' failure to appear for

trial, failure to comply with the Court's orders and Rules, and failure otherwise properly to prosecute the case.

Respondent acknowledges the burden of production with respect to additions to tax under sections 6651(a)(2) and 6654. See sec. 7491(c). The examining agent testified that substitutes for returns had been filed pursuant to section 6020(b) for 2000, 2001, and subsequent years for which no returns had been filed by petitioners. Certifications under section 6020(b) were received in evidence with respect to 2000 and 2001. Thus respondent's burden with respect to section 6651(a)(2) has been satisfied.

Despite the probability that petitioners had income from their real properties during 1999 and that they failed to file a return for that year or to pay estimated taxes for 2000, no reliable evidence was presented with respect to petitioners' tax liability for 1999. We cannot, therefore, sustain the section 6654 addition to tax for 2000. See Wheeler v. Commissioner, 127 T.C. 200, 210-212 (2006), affd. 521 F.3d 1289 (10th Cir. 2008).

The examining agent testified and presented records to satisfy respondent's burden of proving fraudulent failure to file returns. Secs. 6651(f), 7454(a); Rule 142(b). Long-recognized badges of fraud that are found in this case include the pattern of failing to file returns, substantial unreported income, implausible or inconsistent explanations of behavior, concealment of assets, and failure to cooperate with tax authorities. In

addition, petitioners admitted in their petition, as quoted above, that they failed to maintain adequate records. See, e.g., Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Clayton v. Commissioner, 102 T.C. 632, 647-653 (1994); Grosshandler v. Commissioner, 75 T.C. 1, 19-20 (1980); Gajewski v. Commissioner, 67 T.C. 181, 199-200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). The evidence presented by respondent was clear and convincing.

Because respondent has presented evidence of unreported income, petitioners must come forward with evidence in support of any claimed defenses; failure to do so allows the inference that they have no defenses, such as nontaxable sources of funds or deductible expenses. See Brooks v. Commissioner, 82 T.C. 413, 433 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). The penalty under section 6651(f) will be upheld.

Petitioners' position in this proceeding has been frivolous and groundless, and they have failed to exhaust administrative remedies. A penalty under section 6673 in an amount not to exceed $25,000 would be justified on this record. Under the circumstances, however, the decision to be entered is a sufficient sanction.

For the reasons explained above,

<u>Decision will be entered for respondent except for the addition to tax under section 6654 for 2000</u>.