T.C. Memo. 2014-256

UNITED STATES TAX COURT

HAMLET C. BENNETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15929-10.                    Filed December 22, 2014.

Hamlet C. Bennett, pro se.

<u>Nhi T. Luu</u> and <u>Kimberly T. Packer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  In two notices, respondent determined deficiencies and
additions to tax as follows:

[*2]

| Year | Deficiency | Additions to tax/penalties | |
| --- | --- | --- | --- |
| | | Sec. 6651(f)[1] | Sec. 6651(a)(2) |
| 1995 | $128,770 | $93,358.25 | $32,192.50 |
| 1996 | 125,550 | 91,023.75 | 31,387.50 |
| 1997 | 148,087 | 107,363.08 | 37,021.75 |
| 1998 | 223,584 | 162,098.40 | 55,896.00 |
| 1999 | 177,637 | 128,786.83 | 44,409.25 |
| 2000 | 337,105 | 244,401.13 | 84,276.25 |
| 2001 | 280,939 | 203,680.78 | 70,234.75 |
| 2002 | 368,152 | 266,910.20 | 92,038.00 |
| 2003 | 284,406 | 206,194.35 | 71,101.50 |

[1]The amount set forth above for the penalty under section 6651(f) for each taxable year is at the maximum rate of 75% of the amount required to be shown as tax on the return. These amounts will be reduced to 72.5% if the Court sustains the additions to tax under section 6651(a)(2).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner's unreported income was determined using bank deposits plus some specific income items from payments diverted to or for the benefit of petitioner. The Internal Revenue Service (IRS) prepared substitutes for returns

[*3] under section 6020(b), but petitioner failed to pay the amounts shown on those returns. In the answer respondent alleged increased amounts to reflect that petitioner's status during 1995 through 2001 was married filing separately, rather than single as used in the statutory notice. Before trial, respondent reviewed additional bank records, reduced gross receipts for 1996 through 1998, and allowed business expense deductions for 1995 through 1998 that had not been allowed in the notices of deficiency. (Deductions had been allowed in the statutory notice for the later years.) The issue for decision is whether petitioner's failure to file tax returns for the years in issue was fraudulent.

FINDINGS OF FACT

Some of the facts have been deemed stipulated pursuant to Rule 91(f). The stipulated facts are incorporated in our findings by this reference. Petitioner alleged a residence in Louisiana at the time he filed his petition.

Petitioner was born in Los Angeles, California. He attended the Art Center School, studied architecture, and graduated with a bachelor of arts degree in January 1960. In 1965 he moved to Hawaii. He obtained jobs doing architectural illustrations of housing tracts that were being developed. Petitioner has been a licensed architect since 1985.

**[*4]**    Petitioner married Beverly Bennett in 1970.  They were married until her death in September 2001.  From 1971 through 2008, petitioner resided in a house constructed on seven acres of land in Holualoa, Hawaii, that Beverly Bennett had obtained during a divorce from her prior husband.

Petitioner designed office buildings and other commercial structures, but most of his works were luxury residences designed for clients, including celebrities.  He entered into contracts to design houses and, in exchange for his services, received gross receipts during each of the years in issue.

From 1960 through 1993, petitioner filed income tax returns reporting his earnings as an architect.  Petitioner and Beverly Bennett (Bennetts) filed joint returns from 1970 through 1993.  On the jointly filed returns for 1992 and 1993, the Bennetts owed approximately $90,000, which they did not pay in full.  A return was prepared for 1994 but apparently was not filed.  No returns were filed for the years in issue in this case.

In the mid-1990s, the Bennetts attended a seminar presented by Royal LaMarr Hardy, who was a carpet cleaner when petitioner first met him.  Hardy presented various means of avoiding tax liabilities, and the Bennetts decided to try them.  After a proceeding was filed to enforce a summons for petitioner's business records, on December 9, 1996, the Bennetts filed a petition in bankruptcy.  The

**[*5]** bankruptcy petition was filed the day that petitioner was supposed to appear in a summons enforcement case. However, the Bennetts abandoned the bankruptcy strategy by failing to file required documents when they realized that bankruptcy would have adverse consequences to them.

Petitioner established Architects Group Trust (AGT) in 1996, Architects Management, LLC (AML) in 2001, and Divine Wellness Spiritual Order (DWSO) in 2003. Attorney Paul Sulla assisted petitioner in establishing the entities. Petitioner directed that payments be made to these entities for his services, including:

| Amount | Entity | Year |
| --- | --- | --- |
| $96,000 | AGT | 1999 |
| 84,000 | AGT | 2000 |
| 240,000 | AML | 2001 |
| 300,000 | AML | 2002 |

Petitioner maintained control over bank accounts and brokerage accounts into which he deposited gross receipts from his architectural services. Some of the accounts were in the names of the entities he established. Deposits to those accounts exceeded $300,000 in 1995, 1996, and 1997; $500,000 in 1998 and 1999; and $1 million in 2000, 2001, 2002, and 2003. Neither petitioner nor the

**[\*6]** entities he established filed tax returns reporting petitioner's income for his architectural services.

At times petitioner instructed his clients to purchase assets for him, his family, or his associates in lieu of paying him directly for his services. For example, during 2000, he agreed to perform architectural services for a car dealer. In payment for the services, the dealer purchased two automobiles worth a total of $100,000 for women friends of petitioner. At other times, petitioner directed that payments for his services be made to a draftsman or others performing services for petitioner.

Petitioner established nominee entities and adopted other devices in order to conceal income he received for his architectural services during the years in issue. He did so even though his tax adviser and tax return preparer, a certified public accountant, tried to dissuade him. When foreclosure proceedings were commenced regarding the mortgage on petitioner's residence, he provided funds to a nominee to repurchase the residence in order to conceal his continuing beneficial ownership.

Petitioner was contacted in 1999 by agents conducting a criminal investigation of Hardy. He initially provided oral statements to the agents but refused to sign and tore up the affidavit prepared consistent with those statements.

**[\*7]** Petitioner adopted a series of frivolous arguments and pursued them even after he was indicted and convicted and spent years in prison, as described below. The frivolous theories pursued by him from time to time included: filing tax returns was "voluntary"; he was not a "person" required to file returns; section 911 and regulations concerning withholding of income tax exclude domestic income of U.S. citizens; the IRS did not follow proper procedures; and actions were not properly delegated to IRS employees.

On February 9, 2006, petitioner was indicted on various Federal counts including income tax evasion in violation of section 7201 for 1999 through 2003. He was found guilty by a jury, and judgment was entered by the District Court for the District of Hawaii on August 18, 2008. Petitioner was sentenced to 78 months in prison. In June 2009, his conviction was affirmed by the Court of Appeals for the Ninth Circuit, which concluded, among other things, that the evidence during the criminal trial was sufficient as to willfulness. Petitioner served over five years of his sentence and was released in November 2013.

OPINION

Petitioner contends that compensation for architectural services he performed in Hawaii is not subject to income tax and that therefore he was not required to file returns for the years in issue. Before trial, respondent filed a

**[\*8]** motion for partial summary judgment that petitioner was collaterally estopped to deny fraudulent intent for 1999 through 2003 inclusive, years for which petitioner had been convicted of tax evasion under section 7201. That motion was granted. In the order granting summary judgment, the Court stated that the amounts of the deficiencies and penalties for 1999 through 2003 would be determined on the evidence at trial, as would petitioner's liabilities, if any, for the other years in issue. The Court also warned petitioner that his position was frivolous and that continuation of groundless and frivolous positions might subject him to a penalty not to exceed $25,000 under section 6673.

Petitioner persisted in his position at trial that his earnings for architectural services rendered in Hawaii are not taxable because he is a U.S. citizen and has no foreign earned income taxable under section 911 and related regulations. His argument is based on inapplicable statutes and circular reasoning. He denies that "worldwide income" includes domestic income, substituting his own reading of statutory and regulatory materials for those of every court that has spoken on the subject in innumerable cases decided over decades. He takes items out of context, treats "includes" as a term of limitation, and contends that references to certain categories within a statute or regulation exclude all others. He has not presented any reason to reject respondent's recalculated deficiencies and additions to tax or

**[*9]** penalties. He has refused to produce evidence of nontaxable bank deposits or deductible expenses.

Petitioner's interpretative arguments have been consistently rejected in strong terms, even in judicial opinions sustaining criminal convictions. See, e.g., United States v. Ward, 833 F.2d 1538, 1539 (11th Cir. 1987) ("utterly without merit"); United States v. Latham, 754 F.2d 747, 750 (7th Cir. 1985) ("inane" and "preposterous"); United States v. Rice, 659 F.2d 524, 528 (5th Cir. 1981) ("frivolous non-sequitur"). In Takaba v. Commissioner, 119 T.C. 285, 292 (2002), the taxpayer and his counsel, Paul Sulla (the attorney who assisted petitioner in establishing entities used to conceal income), were sanctioned under section 6673(a)(1) and (2), respectively, for arguing, among other things, that a U.S. citizen residing in Hawaii was not taxable on compensation earned in Hawaii. No further discussion of petitioner's stale theories is warranted. See Crain v. Commissioner, 737 F.2d 1417 (5th Cir. 1984).

Petitioner has conceded all of the facts necessary to sustain the revised deficiencies, including the bank deposits and his marital status. The section 6651(a)(2) additions to tax are sustained upon the basis of petitioner's failure to pay the tax shown on the returns the IRS prepared under section 6020(b). See

**[\*10]** <u>Cabirac v. Commissioner</u>, 120 T.C. 163, 170 (2003); <u>Tinnerman v. Commissioner</u>, T.C. Memo. 2006-250, slip op. at 16.

We must decide, however, whether petitioner's failure to file returns for 1995 through 1998, years for which collateral estoppel does not apply, was accompanied by an intent sufficient to sustain the section 6651(f) penalty. Section 6651(f) provides a penalty of 75% of the amount required to be shown as tax on unfiled returns if the failure to file the returns is fraudulent. The civil fraud penalty is a sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. <u>Helvering v. Mitchell</u>, 303 U.S. 391, 401 (1938). Respondent has the burden of proving fraud by clear and convincing evidence. <u>See</u> sec. 7454(a); Rule 142(b).

In applying section 6651(f) to determine whether petitioner's failure to file tax returns was fraudulent, we consider the same elements considered in cases involving former section 6653(b) and present section 6663. <u>See</u> <u>Clayton v. Commissioner</u>, 102 T.C. 632, 653 (1994); <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 211-213 (1992). Fraud may be proved by circumstantial evidence, and the taxpayer's entire course of conduct may establish the requisite fraudulent intent. <u>Rowlee v. Commissioner</u>, 80 T.C. 1111, 1123 (1983). Circumstantial evidence of

[*11] fraud includes "badges of fraud" such as those present here: a longtime pattern of failure to file returns, failure to report substantial amounts of income, failure to cooperate with taxing authorities in determining the taxpayer's correct liability, implausible or inconsistent explanations of behavior, and concealment of assets. See, e.g., Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958); Grosshandler v. Commissioner, 75 T.C. 1, 19-20 (1980); Gajewski v. Commissioner, 67 T.C. 181, 199-200 (1976), aff'd without published opinion, 578 F.2d 1383 (8th Cir. 1978).

Petitioner admits that he received payments for architectural services performed during each of the years in issue, and the specific items of diverted income and the bank deposits have been deemed stipulated because he did not deny them. Bank deposits are prima facie evidence of income. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977). Proof of gross receipts in the amounts shown by the bank deposits analysis for each of the years in issue in this case is sufficient to satisfy respondent's burden of showing that petitioner had an obligation to file returns. See secs. 1, 6011, 6012.

[*12] We reject any inference that petitioner's persistence in his frivolous theories demonstrates sincerity or good faith or is otherwise a defense to the charge of fraud. Petitioner filed tax returns for decades before 1995, stopping only after he faced large tax liabilities for 1993 and 1994. He "discovered" his various frivolous arguments in alleged reliance on a carpet cleaner turned tax adviser, while disregarding the cautionary advice of his certified public accountant. He adopted various means of concealing income by diverting income to nominees or to entity accounts. He rejects the judgments of the courts, including a jury verdict, a District Court judgment, and an appellate court opinion that he was criminally responsible for his conduct. A person with his education and skills could be expected to abandon unsuccessful arguments if acting in good faith. We conclude that petitioner's failure to file for each year in issue was due to fraud. See Miller v. Commissioner, 94 T.C. 316, 332-336 (1990); Chase v. Commissioner, T.C. Memo. 2004-142; Tonitis v. Commissioner, T.C. Memo. 2004-60; Madge v. Commissioner, T.C. Memo. 2000-370, aff'd, 23 Fed. Appx. 604 (8th Cir. 2001); Greenwood v. Commissioner, T.C. Memo. 1990-362.

Petitioner was warned of the possibility of a penalty under section 6673 if he persisted in his contention that he was not required to file returns and pay tax on his income for architectural services performed in Hawaii. Under these

[*13] circumstances, section 6673(a)(1) provides for a penalty not in excess of $25,000 when proceedings have been instituted or maintained by the taxpayer primarily for delay or the taxpayer's position is frivolous or groundless. It may seem that an additional $25,000 on top of the amounts petitioner already owes will not change his position. However, serious sanctions also serve to warn other taxpayers to avoid pursuing similar tactics. See Coleman v. Commissioner, 791 F.2d 68, 71-72 (7th Cir. 1986); Takaba v. Commissioner, 119 T.C. at 295. An award of $25,000 to the United States will be included in the decision to be entered here.

To reflect the change in petitioner's filing status for 1995 through 2001 and respondent's revised bank deposits analysis,

Decision will be entered

under Rule 155.