T.C. Memo. 2016-140

UNITED STATES TAX COURT

ROBERT F. BATSCH, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 28568-13, 28694-13,      Filed July 26, 2016.
10597-14, 10638-14.

Robert F. Batsch, pro se.

Patricia Hyde, pro se.

H. Elizabeth H. Downs and Jamie M. Stipek, for respondent.

---

[1]Cases of the following petitioners are consolidated herewith: Robert F. Batsch, docket No. 10638-14; and Patricia Hyde, docket Nos. 28694-13 and 10597-14.

[*2]     MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  Respondent determined deficiencies and additions to tax as follows:

Robert F. Batsch, Docket Nos. 28568-13 and 10638-14

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(f) | Sec. 6651(a)(2) | Sec. 6654 |
| 2007 | $35,534.89 | $25,762.80 | $8,883.72 | $1,617.29 |
| 2008 | 23,070.00 | 16,725.75 | 5,767.50 | 741.40 |
| 2009 | 18,971.00 | 13,753.98 | ([1]) | 454.25 |
| 2010 | 12,375.00 | 8,971.88 | ([1]) | 265.39 |
| 2011 | 11,117.00 | 8,059.83 | ([1]) | 220.07 |
| 2012 | 10,117.00 | 7,334.83 | ([1]) | 181.36 |

[1]To be computed at a later date.

Patricia Hyde, Docket Nos. 28694-13 and 10597-14

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(f) | Sec. 6651(a)(2) | Sec. 6654 |
| 2007 | $54,046 | $39,183.35 | $13,511.50 | $2,459.78 |
| 2008 | 33,870 | 24,555.75 | 8,467.50 | 1,088.47 |
| 2009 | 22,159 | 16,065.28 | ([1]) | 530.56 |

**[*3]**

| | | | | |
|---|---|---|---|---|
| 2010 | 15,732 | 11,405.70 | ($^1$) | 337.40 |
| 2011 | 13,028 | 9,445.30 | ($^1$) | 257.94 |
| 2012 | 11,374 | 8,246.15 | ($^1$) | 203.93 |

[1]To be computed at a later date.

The notices of deficiency for 2007-11 were sent September 10, 2013, and the notices for 2012 were sent February 10, 2014. The deficiencies were determined after the Internal Revenue Service (IRS) had prepared substitutes for returns under section 6020(b) that were based upon an analysis of bank deposits into accounts maintained and controlled by petitioners. All section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Despite repeated warnings by the Court of the consequences of their positions, petitioners refused to testify or to present any evidence concerning their income and deductions. Throughout these cases they have presented only frivolous arguments denying their obligations to file tax returns and pay taxes on their income. Thus, the only issue for decision is whether petitioners are liable for the fraudulent failure to file additions to tax under section 6651(f).

- 4 -

**[*4]**                        FINDINGS OF FACT

Background Facts

The following facts have been deemed stipulated pursuant to Rule 91(f) because petitioners' response to the motion made under that Rule was evasive and not fairly directed to the proposed stipulation. See Rule 91(f)(3). In addition to the facts found here, the stipulation included copies of petitioners' bank records supporting respondent's determination and copies of official records of the IRS showing petitioners' failure to file returns. Because petitioners have not addressed the amounts determined other than by their frivolous procedural arguments, it is unnecessary to set forth the details of transactions apparent from the bank deposits.

Petitioners resided in Arkansas at the time they filed their petitions. They are not married but have resided together at least since 2006. On correspondence with the IRS they used an address of 8334 W. McNelly Road, Bentonville, Arkansas 72712 (petitioners' residence). The Batsch Revocable Trust and petitioners, as co-trustees of the trust, own petitioners' residence.

Between taxable years 2007 and 2012, receipts from the Spanker Creek Farm Arts and Crafts Fair were deposited into at least three bank accounts--an account with Arvest Bank ending in 0093 held jointly in the names of Patricia

**[*5]** Hyde and Robert F. Batsch; an account with Arvest Bank ending in 3981 held in the name of Patricia Hyde, Trustee for Patricia L. Hyde Revocable Trust (also known as Patricia L. Hyde Irrevocable Trust); and an account with Arvest Bank ending in 4637 held in the name of Patricia Hyde, Trustee for Spanker Creek Farm.

The total gross receipts deposited into those accounts and determined from that source were:

| 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|
| $97,643.44 | $86,062.80 | $77,980.84 | $70,923.80 | $62,646 | $57,525 |

Petitioners also had additional income from rents, dividends, capital gains, interest, and other sources during the years in issue.

Batsch has not filed Federal income tax returns for years 1998 through 2012. The IRS prepared substitutes for returns under section 6020(b) for Batsch for 2007, 2008, 2009, 2010, 2011, and 2012.

Hyde's last filed Federal income tax return was for 2005. She has not filed Federal income tax returns for 2006 through 2012. The IRS prepared substitutes for returns under section 6020(b) for her for 2006, 2007, 2008, 2009, 2010, 2011, and 2012.

**[*6]** <u>Chronology</u>

Hyde has had similar cases in this Court before, and the history of those cases and the course of these cases are set forth here because these facts are material in determining whether petitioners' admitted pattern of refusing to file returns or pay Federal income tax was fraudulent.

In the case at docket No. 25406-08, decided in <u>Hyde v. Commissioner</u>, T.C. Memo. 2011-131, Hyde contested her liability for a deficiency and an accuracy-related penalty for 2005. She claimed to have rescinded her 2005 return and raised a plethora of frivolous issues. The Court rejected Hyde's arguments about the administrative circumstances surrounding the determination, explained that this Court conducts a proceeding de novo to redetermine a taxpayer's tax liability on the basis of evidence presented, sustained the determination that Hyde's compensation for services was taxable, and sustained a section 6662 penalty.

In the case at docket No. 8225-10, decided in <u>Hyde v. Commissioner</u>, T.C. Memo. 2011-104, <u>aff'd per curiam</u>, 471 F. App'x 537 (8th Cir. 2012), Hyde contested her liability for a deficiency and failure to file additions to tax for 2006. The Court rejected the "hodgepodge of frivolous and groundless claims that both this Court and the Eighth Circuit have consistently rejected." Those claims included Hyde's arguments concerning the validity of the substitute for return and

[*7] her liability for Federal income tax. The Court imposed a $3,000 penalty under section 6673, noting that Hyde had been warned at trial but had ignored the warning. In its opinion filed July 2, 2012, the Court of Appeals for the Eighth Circuit affirmed this Court's decision and found no abuse of discretion in the imposition of the penalty.

The examination for petitioners' years in issue was conducted by Revenue Agent Michael Shaun Oliver. Oliver began his work with respect to Batsch and expanded it to include Hyde. He determined that neither had filed tax returns for 2007 through 2012. Petitioners failed to respond to letters, notices, or summonses or to cooperate otherwise with Oliver. They responded only after they received his examination reports. Upon receipt of a letter dated May 28, 2013, from petitioners, Oliver sent them a copy of the IRS publication "The Truth About Frivolous Tax Arguments". Petitioners responded by acknowledging receipt of the publication in a letter dated June 14, 2013. (Hyde denied receipt of the publication during trial.)

Because petitioners failed to cooperate, Oliver researched various available materials concerning, among other things, the Spanker Creek Farm Arts and Crafts Fair. He obtained records from the Benton County Planning Commission, the tax assessor's office, brokerages, and several banks. He performed a thorough bank

[*8] deposits analysis of multiple accounts in the names of petitioners or over which Hyde had signature authority. In that process he identified apparent income items and likely deductible expenses related to petitioners. He observed frequent withdrawals of cash.

During his analysis Oliver discovered that petitioners had unreported income from sales of stock and financial instruments, dividends, retirement account distributions, rents, and farming income. He carefully allocated items such as rents, interest, capital gains, and other income to one or the other petitioner to the extent apparent from the records. He identified nontaxable receipts and transfers and allowable deductions to the extent possible. He also discovered that petitioners had written checks to "Hearts Desire". Following that discovery, he issued a summons to Hearts Desire Precious Jewelry/NWA Gold & Silver and received records showing that Batsch had made substantial purchases of precious metals.

Oliver prepared and certified substitutes for returns under section 6020(b) for each petitioner for each year, pursuant to authority under Delegation Order 5-2, set forth in Internal Revenue Manual (IRM) pt. 1.2.44.3 (Sept. 19, 2012 & rev. Oct. 21, 2013). He recommended assertion of the fraudulent failure to file addition to tax because of the unreported income, assignment of assets to a trust,

[*9] use of cash, dealings in gold and silver, and history of nonfiling. He also became aware of Hyde's assertion of frivolous arguments in cases decided by this Court. The substitutes for returns were submitted to IRS Technical Services for review and certification and were duly approved as the basis for the notices of deficiency.

Each notice of deficiency was signed on behalf of the Commissioner of the IRS by the Technical Services Territory Manager or the Acting Technical Services Territory Manager, pursuant to Delegation Order 4-8, set forth in IRM pt. 1.2.43.9 (Sept. 4, 2012).

The petitions in these cases, all filed in 2013 and 2014, reasserted Hyde's previously rejected arguments and added additional arguments that have been repeatedly and consistently rejected by this and other courts. Petitioners did not identify any bank deposits that would not constitute taxable income or any expenditures that would be allowable as deductions, and petitioners' position is that, as stated at trial by Hyde, "Your Honor, to my knowledge, we have no subject items of income; therefore, no deductions of any kind."

Throughout the course of these proceedings, petitioners have filed various requests and motions reasserting their frivolous positions. The cases were first set for trial on June 8, 2015. On May 14, 2015, the Judge scheduled to preside at the

[*10] June 8, 2015, calendar denied petitioners' then-pending discovery motions except to the extent that respondent was ordered to provide third-party contacts made that related to the determinations of petitioners' income and deductions for the years at issue in these cases. The orders in each case also stated:

> It appears to the Court that petitioner is making frivolous and groundless arguments that have been rejected repeatedly by this and other courts. Petitioner is hereby warned that such conduct may lead to a penalty against him [or her, as to Hyde] in an amount not to exceed $25,000 under section 6673. However, buried among the frivolous arguments in the motions under consideration, [one or two] discovery request[s] could be read to be aimed at discovering information relevant to a determination of petitioner's income and deductions, which is the issue to be resolved.

The cases were continued from the June 8, 2015, calendar, but the Judge presiding at that calendar retained jurisdiction in order to assist the parties in preparing for a later trial, specifically in reaching a stipulation of facts. On July 8, 2015, the Judge summarized proceedings to that time and denied another frivolous motion of petitioners, explaining:

> Contrary to petitioners' Motion for Sanctions, the record in these cases supports the conclusion that petitioners, not respondent, have failed to comply with this Court's Standing Pretrial Order. As that Order states, if the failure to stipulate is "due to lack of cooperation by either party, the Court may order sanctions against the uncooperative party."

> On the basis of the record before us, it appears that petitioners do not intend to prosecute their cases in accordance with the Court's

- 11 -

[*11] rules, but rather insist on making frivolous arguments and impeding preparation of this case for trial. We already have warned petitioners about the consequences of making frivolous arguments (a penalty in an amount not to exceed $25,000 under section 6673). We also warn petitioners that failure to put on any evidence may result in a default or dismissal of their cases and entry of decision in favor of respondent, pursuant to Rule 123.

As we did at the June 8, 2015, hearing, we again remind petitioners that the purpose of a trial in this Court is to consider evidence of petitioners' income or deductions for the tax years 2007, 2008, 2009, 2010, 2011, and 2012 to determine their tax liability. If petitioners do not put on any such evidence, they risk being assessed tax twice on the same income should the Court sustain the notices of deficiency at issue here, as respondent, in the absence of any evidence allocating the income between them, attributed certain income to both petitioners in those notices. Furthermore, because deductions are a matter of legislative grace, petitioners must put on evidence showing that they are entitled to deductions; otherwise they may not be entitled to reduce their taxable income by those amounts.

The cases were calendared for trial on April 11, 2016. On November 17, 2015, respondent filed a motion for order to show cause why proposed facts and evidence should not be accepted as established pursuant to Rule 91(f). Attached to the proposed stipulation were over 3,500 pages of exhibits consisting of official IRS documents and petitioners' bank records. Petitioners' response was filed December 14, 2015. Petitioners did not dispute any of the specific facts set forth in respondent's proposed stipulation, and they did not raise any reasonable objection to the attached exhibits. By order dated December 16, 2015, the Court

[*12] made the order to show cause absolute and deemed the facts and evidence set forth in respondent's proposed stipulation to be stipulated for purposes of these cases. The order explained:

> Rule 91(f)(3) provides, and petitioners were warned, that if their responses were evasive or not fairly directed to the proposed stipulation or portion thereof, that matter or portion thereof will be deemed stipulated for purposes of the pending cases. Petitioners' response consists of nonsensical denials of facts that should not reasonably be in dispute and legal arguments that are gibberish and intended only to obstruct determination of their correct liability. Petitioners' pro se status does not excuse their attempt to litter the docket of this Court with ridiculous allegations. See Parker v. Commissioner, 117 F.3d 785, 787 (5th Cir. 1997). Their arguments concerning delegation of authority have been rejected and characterized as frivolous. See, e.g., Winslow v. Commissioner, 139 T.C. 270, 274, 276 (2012). Their arguments concerning jurisdiction, validity of the statutory notices, and legality of respondent's evidence are "frivolous squared". United States v. Cooper, 170 F.3d 691, 691 (7th Cir. 1999). See Hyde v. Commissioner, T.C. Memo. 2011-131; Hyde v. Commissioner, T.C. Memo. 2011-104, aff'd 471 Fed. Appx. 537 (8th Cir. 2012). They have been repeatedly warned of the adverse consequences that they face if they continue the course they have adopted in these cases.

OPINION

With the exception of a few responses by Batsch to questions addressed to him by the Court, Hyde conducted the trial on behalf of petitioners. She began by stating her disagreement with the stipulation. She was advised by the Court:

> The bank records should not be in dispute. This is your last opportunity to present any evidence [that] the bank deposits do not

[*13] represent taxable income [or] there's some nontaxable source, or that you have deductions that have not been allowed in the statutory notice. But the documents are in evidence. You may present contrary evidence, but as far as I can tell from the record, you haven't raised any reasonable dispute as to the income. * * * The only item in dispute from my perspective today is whether your failure to file tax returns was due to fraud. And as I explained yesterday, your persistence in frivolous arguments, meritless arguments, your refusal to cooperate in a correct determination of your liability is an indication that your claims are not made in good faith because you're rejecting the repeated authorities in your own case, Ms. Hyde, that the Court--the Tax Court and the Court of Appeals that your arguments are frivolous.

Notwithstanding the clear warnings to petitioners, Hyde spent over an hour presenting documents that she claimed supported her position, summarized as follows:

And let me make a couple of more comments just to get them on the record, Your Honor. And basically the point that we're getting at is we are not subject to the jurisdiction of the United States. I don't know how that's even possible. We was not born--the United States as described in the law and according to that, be it right or wrong, these laws are what we based the (inaudible) that we are not subject to. And we can't find one where we are subject to because according to this and--and according to what we are as people that is a citizen of the several states, not of what we see as being defined as the United States or the state--the term United States when you used in a geographical sense includes the state of--I mean it--it's just the-- where Congress has its exclusive jurisdiction. Congress does not have exclusive jurisdiction within the States.

The factual matters addressed during her presentation were records, showing that Batsch was born in Missouri and Hyde was born in Texas, in support

[*14] of her theory that petitioners are not citizens of the United States for purposes of the tax laws.  She also presented records that showed that petitioners' residence had been the subject of various deeds to the trust and to petitioners as trustees and is in the county of Benton rather than the city of Bentonville.  Both petitioners declined to testify, asserting their privilege against self-incrimination.  Thus, the only evidence in the record relating to petitioners' taxable income consists of the bank records, other documents that support Oliver's analysis, and the statutory notices.  Petitioners never identified an error in Oliver's exceptionally detailed analysis of their taxable income for each year.  Respondent has provided far more than the minimal evidentiary foundation to establish unreported income.  See Dodge v. Commisssioner, 981 F.2d 350 (8th Cir. 1992), aff'g in part, rev'g in part 96 T.C. 172 (1991).  Once gross receipts were established, petitioners had the obligation to show offsets that would reduce taxable income.  See, e.g., DiLeo v. Commissioner, 96 T.C. 858, 872 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Brooks v. Commissioner, 82 T.C. 413, 433 (1984), aff'd without published opinion, 772 F.2d 910 (9th Cir. 1985).

Petitioners' failure to produce evidence with respect to the deficiencies is a ground for determination of those issues against them.  Despite our reluctance to reach a decision where taxable income is duplicated to separate taxpayers, we have

- 15 -

**[*15]** no alternative to accepting respondent's whipsaw position. See, e.g.,

Putnam v. Commissioner, T.C. Memo. 2015-160, at *25-*27; Tilley v.

Commissioner, T.C. Memo. 2009-83, slip op. at 12; see also Maggie Mgmt. Co. v.

Commissioner, 108 T.C. 430, 446 (1997).

Petitioners' arguments about the validity of the section 6020(b) substitutes

for returns are groundless, as Hyde was advised in Hyde v. Commissioner, T.C.

Memo. 2011-104, slip op. at 5, as follows:  "It is well settled that a substitute for

return prepared by the Commissioner under section 6020 is prima facie 'good and

sufficient for all legal purposes', including to assess Federal income tax liability

shown on a substitute for return as due and owing.  See sec. 6020(b)(2); United

States v. Silkman, 220 F.3d 935, 936 (8th Cir. 2000)."  See also Rader v.

Commissioner, 143 T.C. 376, 382 (2014); Whittington v. Commissioner, T.C.

Memo. 2015-152.

Equally lacking in merit are petitioners' arguments about the validity of the

statutory notices.  Courts have held consistently, in various contexts, that (1) a

signature is not required on a notice of deficiency and (2) provisions of the IRM

do not give rights to a taxpayer or affect the validity of a notice or this Court's

jurisdiction.  See, e.g., Selgas v. Commissioner, 475 F.3d 697, 699-700 (5th Cir.

2007); Tavano v. Commissioner, 986 F.2d 1389, 1390 (11th Cir. 1993) (per

**[\*16]** curiam), aff'g T.C. Memo. 1991-237; Urban v. Commissioner, 964 F.2d 888, 889 (9th Cir. 1992) (per curiam), aff'g T.C. Memo. 1991-220; Ball v. Commissioner, T.C. Memo. 2006-141, slip op. at 7. Arguments concerning delegation of authority have been rejected and characterized as frivolous. See, e.g., Winslow v. Commissioner, 139 T.C. at 274, 276; Roye v. Commissioner, T.C. Memo. 2012-246, at \*15, \*16 n.6; see also Grunsted v. Commissioner, 136 T.C. 455, 460-461 (2011).

Hyde has a history of pursuing frivolous arguments and rejecting the conclusions of every court that has considered them. Petitioners' theory that citizens and residents of various States are not subject to Federal jurisdiction because the applicable statutes include certain Federal territories in the statement of coverage is an argument that "includes" means "only" and excludes anything else. Such interpretative arguments have been consistently rejected in strong terms, even in judicial opinions sustaining criminal convictions. See, e.g., United States v. Ward, 833 F.2d 1538, 1539 (11th Cir. 1987) (per curiam) ("utterly without merit"); United States v. Latham, 754 F.2d 747, 750 (7th Cir. 1985) ("inane" and "preposterous"); United States v. Rice, 659 F.2d 524, 528 (5th Cir. 1981) ("frivolous non-sequitur"). The Court of Appeals for the Eighth Circuit has characterized as "absurd" an argument that taxpayers were not citizens of the

**[*17]** United States but rather citizens of a State and therefore not subject to Federal taxation. United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993) (per curiam) (citing United States v. Kruger, 923 F.2d 587, 587-588 (8th Cir. 1991)); see Crain v. Commissioner, 737 F.2d 1417, 1418 (5th Cir. 1984) (per curiam) (granting penalties against taxpayer whose spurious arguments on taxation and jurisdiction were "unsupported" and "meritless").  No further discussion of petitioners' stale theories is warranted.

We must decide, however, whether petitioners' failure to file returns for the years before us was accompanied by an intent sufficient to sustain the section 6651(f) additions to tax.  Section 6651(f) provides an increased penalty of 75% of the amount required to be shown as tax on unfiled returns if the failure to file the returns is fraudulent.  In applying section 6651(f) to determine whether petitioners' failure to file tax returns was fraudulent, we consider the same elements considered in cases involving former section 6653(b) and present section 6663.  See Clayton v. Commissioner, 102 T.C. 632, 653 (1994); Niedringhaus v. Commissioner, 99 T.C. 202, 211-213 (1992).  The civil fraud penalty is a sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud.  Helvering v. Mitchell, 303 U.S. 391, 401

[*18] (1938). Respondent has the burden of proving fraud by clear and convincing evidence. See sec. 7454(a); Rule 142(b).

Bank deposits are prima facie evidence of income. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977). Proof of gross receipts in the amounts shown by the bank deposits analysis in these cases is sufficient to satisfy respondent's burden of showing that petitioners had an obligation to file returns. See secs. 1, 6011, 6012.

Fraud may be proved by circumstantial evidence, and the taxpayer's entire course of conduct may establish the requisite fraudulent intent. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Circumstantial evidence of fraud includes "badges of fraud" such as those present here: a longtime pattern of failure to file returns, failure to report substantial amounts of income, failure to maintain adequate records, failure to cooperate with taxing authorities in determining the taxpayer's correct liability, and implausible or inconsistent explanations of behavior. See, e.g., Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958); Grosshandler v. Commissioner, 75 T.C. 1, 19-20

**[\*19]** (1980); Gajewski v. Commissioner, 67 T.C. 181, 199-201 (1976), aff'd without published opinion, 578 F.2d 1383 (8th Cir. 1978).

The additions to tax for fraud have frequently been imposed on taxpayers like petitioners "who were knowledgeable about their taxpaying responsibilities * * * [and] consciously decided to unilaterally opt out of our system of taxation." Miller v. Commissioner, 94 T.C. 316, 335 (1990); see Niedringhaus v. Commissioner, 99 T.C. at 212, 217-219; Porter v. Commissioner, T.C. Memo. 2015-122, at \*24; Bennett v. Commissioner, T.C. Memo. 2014-256, at \*12; Chase v. Commissioner, T.C. Memo. 2004-142, slip op. at 10; Madge v. Commissioner, T.C. Memo. 2000-370, slip op. at 4-5, aff'd, 23 F. App'x 604 (8th Cir. 2001). Because petitioners refused to testify, they have shown no plausible nonfraudulent explanation for their behavior. Their arguments about the validity of the statutory notices are directed at events occurring after the years in issue and do not reflect the relevant state of mind at the times the returns were due. Petitioners' persistence in discredited arguments in the face of unanimous rulings by the courts negates good faith. Thus, they have offered no defense to the inference of fraudulent intent to be drawn from the circumstantial evidence and objective facts found. Respondent's burden of proof has been satisfied.

**[\*20]** To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.
